# EXHIBIT B-1



# Servicing Guide

Fannie Mae Single Family

04/08/2015

# Servicing Guide: Fannie Mae Single Family

Published 04/08/2015

Part D, Providing Solutions to a Borrower                                04/08/2015
Subpart 2, Assisting a Borrower Who is Facing Default or in Default
Chapter 3, Fannie Mae's Home Retention and Liquidation Workout
Options, Home Retention Workout Options

For an MBS mortgage loan, the servicer must also see *Conditions of a First and Second Lien Mortgage Loan Modification for an MBS Mortgage Loan* in D2-3.1-02, Working with an MBS Mortgage Loan for Certain Workout Options.

After the servicer obtains all applicable approvals, it must prepare and fully execute the *Agreement for Modification or Extension of the Mortgage* (Form 181).

The servicer must follow the procedures in *Executing and Recording Form 181* in F-1-26, Processing a Government Mortgage Loan Modification for executing and recording Form 181.

---

#  D2-3.2-07, Fannie Mae HAMP Modification (04/08/2015)

---

**Introduction**

This topic contains the following:

- Determining Eligibility for a Fannie Mae HAMP Modification

- Performing an Escrow Analysis

- Determining the Fannie Mae HAMP Modification Terms

- Communicating with a Borrower Regarding a Fannie Mae HAMP Modification

- Offering a Trial Period Plan and Completing a Fannie Mae HAMP Modification

- Processing a Fannie Mae HAMP Modification for a Mortgage Loan with Mortgage Insurance

- Identifying Loss of Good Standing

- Communicating with a Borrower Regarding Eligibility for the Expanded Borrower "Pay for Performance" Incentive for a Fannie Mae HAMP Modification

- Handling Fees and Late Charges in Connection with a Fannie Mae HAMP Modification

- Servicer Duties and Responsibilities

- Authorization to Sign Amendment to Servicer Participation Agreement

Part D, Providing Solutions to a Borrower                                      04/08/2015
Subpart 2, Assisting a Borrower Who is Facing Default or in Default
Chapter 3, Fannie Mae's Home Retention and Liquidation Workout
Options, Home Retention Workout Options

---

**Determining Eligibility for a Fannie Mae HAMP Modification**

In order to be eligible for a Fannie Mae HAMP modification, all of the criteria in the following table must be met.

| ✓ | Eligibility criteria for a Fannie Mae HAMP modification |
|---|---|
|  | The mortgage loan must be a first lien conventional mortgage loan originated on or before January 1, 2009. |
|  | The mortgage loan must not have been previously modified under HAMP. |
|  | The mortgage loan must be secured by a one- to four- unit property, one unit of which is the borrower's principal residence. The servicer must follow the procedures in *Verifying Occupancy* in F-1-18, Processing a Fannie Mae HAMP Modification for verifying occupancy. |
|  | The mortgage loan must be delinquent or in imminent default. If the mortgage loan is current or less than 60 days delinquent, the servicer must process the modification in accordance with D2-1-02, Using Freddie Mac's Imminent Default Indicator. |
|  | The property securing the mortgage loan must not be vacant or condemned. |
|  | The BRP must document a hardship and represent that the borrower does not have sufficient liquid assets to make the monthly payment.<br><br>**Note:** An unemployed borrower is not eligible for a Fannie Mae HAMP modification. The servicer must consider unemployed borrowers for Unemployment Forbearance. See D2-3.2-02, Forbearance Plan for an Unemployed Borrower for additional information. |
|  | The borrower must currently have a monthly mortgage payment ratio greater than 31%. The servicer must follow the procedures in *Calculating the Monthly Mortgage Payment Ratio* in F-1-18, Processing a Fannie Mae HAMP Modification for calculating the monthly mortgage payment ratio. |
|  | The borrower must not have previously<br><br>• failed a Fannie Mae HAMP Trial Period Plan as described in *Offering a Trial Period Plan and Completing a Fannie Mae HAMP Modification*, or<br><br>• received a Fannie Mae HAMP modification and lost good standing as described in *Identifying Loss of Good Standing*. |

Upon determining that the Fannie Mae HAMP modification eligibility criteria are satisfied, the servicer must evaluate the mortgage loan using a standard NPV test. A mortgage loan with

Part D, Providing Solutions to a Borrower                                      04/08/2015
Subpart 2, Assisting a Borrower Who is Facing Default or in Default
Chapter 3, Fannie Mae's Home Retention and Liquidation Workout
Options, Home Retention Workout Options

a negative NPV result is ineligible for modification. The servicer must follow the procedures in *Using a Standard Net Present Value Test* in F-1-18, Processing a Fannie Mae HAMP Modification for evaluating the mortgage loan using a standard NPV test.

In the following instances, the servicer must evaluate a borrower's subsequent request for a Fannie Mae HAMP modification if he or she experienced a change in circumstance:

- The borrower was previously evaluated for a Fannie Mae HAMP modification but did not meet the eligibility criteria described in this Guide.

- The borrower was previously evaluated for a Fannie Mae HAMP modification and met the eligibility criteria but did not qualify for a Fannie Mae HAMP modification by virtue of the following:

  – a negative NPV result,

  – excessive forbearance, or

  – any other financial reason.

If the borrower converts from a Trial Period Plan to an Unemployment Forbearance plan, the borrower may subsequently be eligible for a Fannie Mae HAMP modification upon successful completion of the Unemployment Forbearance plan and, if eligible, must be placed in a new Trial Period Plan. The servicer must obtain an updated BRP if the previous documentation submitted is greater than 90 days old, with the exception of an *IRS Short Form Request for Individual Tax Return Transcript* (IRS Form 4506T-EZ) if the servicer has already obtained a tax transcript for the most recent tax year.

**First Lien Home Equity Loans and Lines of Credit:** The servicer must consider all first lien home equity loans and lines of credit that meet the basic Fannie Mae HAMP modification eligibility criteria for a Fannie Mae HAMP modification if

- the servicer has the capability within its servicing system to clearly identify the mortgage loan as a first lien, and

- the servicer has the ability to establish an escrow account for the mortgage loan.

If, due to system constraints, the servicer establishes the escrow account after the borrower successfully completes the Trial Period Plan, the Trial Period Plan payment must still equal the target monthly mortgage payment ratio.

Part D, Providing Solutions to a Borrower                                                04/08/2015
Subpart 2, Assisting a Borrower Who is Facing Default or in Default
Chapter 3, Fannie Mae's Home Retention and Liquidation Workout
Options, Home Retention Workout Options

**Performing an Escrow Analysis**

The servicer must perform an escrow analysis prior to determining the borrower's eligibility for a Fannie Mae HAMP modification. See *Administering an Escrow Account in Connection With a Mortgage Loan Modification* in B-1-01, Administering an Escrow Account and Paying Expenses for additional information.

Any escrow account shortage that is identified at the time of the mortgage loan modification must not be capitalized and the servicer is not required to fund any existing escrow account shortage.

**Determining the Fannie Mae HAMP Modification Terms**

The servicer must determine the borrower's new modified mortgage loan terms by taking the steps in the following table in the order provided in an effort to achieve a target monthly mortgage payment ratio as close as possible to, without going below, 31%:

| Step | Action |
|------|--------|
| 1 | Capitalize arrearages. |
| 2 | Reduce the interest rate. |
| 3 | Extend the term up to 480 months from the modification effective date, if necessary. |
| 4 | Forbear principal, if necessary. |

The servicer must follow the procedures in *Determining the New Modified Mortgage Loan Terms* in F-1-18, Processing a Fannie Mae HAMP Modification for determining the borrower's new modified mortgage loan terms.

The servicer must request Fannie Mae's prior written approval through HSSN to

- deviate from the prescribed steps for determining the new modified mortgage payment terms, unless a certain step is prohibited by applicable state law;

- reduce the borrower's monthly mortgage payment ratio below 31%; or

- forbear an amount greater than permitted.

When the servicer submits a request through HSSN for Fannie Mae's approval of a Fannie Mae HAMP modification, it must

- immediately provide the borrower with notice of the right to receive a copy of all appraisals and other valuations developed in connection with the mortgage loan modification, and

Part D, Providing Solutions to a Borrower                                   04/08/2015
Subpart 2, Assisting a Borrower Who is Facing Default or in Default
Chapter 3, Fannie Mae's Home Retention and Liquidation Workout
Options, Home Retention Workout Options

- provide the borrower a copy of all appraisals and other valuations developed in connection with the mortgage loan modification.

> **Note:** A mortgage loan modification for a first lien HELOC must result in a fixed-rate, fully amortizing mortgage loan that does not permit the borrower to draw any further amounts from the line of credit.

Prior to granting a permanent mortgage loan modification, the servicer must place the borrower in a Trial Period Plan using the new modified mortgage loan terms.

**Communicating with a Borrower Regarding a Fannie Mae HAMP Modification**

When the servicer is discussing a Fannie Mae HAMP modification with the borrower, it must provide the borrower with the items listed in the following table.

| ✓ | Information the servicer must provide to the borrower in connection with a HAMP modification |
|---|---|
|   | Information designed to help him or her understand the mortgage loan modification terms that are being offered and the mortgage loan modification process. |
|   | Written information about the material terms, costs, and risks of the modified mortgage loan in a timely manner to enable the borrower to make informed decisions. |
|   | Notification that a mortgage loan modification under HAMP will cancel any assumption, variable or step-rate feature, or enhanced payment options in the borrower's existing mortgage loan at the time the mortgage loan is modified. |

The following table lists the notices that must be sent to the borrower, if applicable, after the borrower has been evaluated for HAMP.

| Required Notice | Description |
|---|---|
| Notice of Mortgage Loan Payoff or Reinstatement | If the mortgage loan is paid off or reinstated, the servicer must provide a notice which includes the payoff or reinstatement date. If the mortgage loan was reinstated, the notice must include a statement that the borrower may contact the servicer to request reconsideration for a Fannie Mae HAMP modification if he or she experiences a subsequent hardship. |
| Notice of Withdrawal of Request or Non-Acceptance of Offer | The servicer must acknowledge that the borrower withdrew the request for consideration for a Fannie Mae HAMP modification, or did not accept either a Trial Period Plan or a Fannie Mae HAMP modification offer. |

Part D, Providing Solutions to a Borrower
Subpart 2, Assisting a Borrower Who is Facing Default or in Default
Chapter 3, Fannie Mae's Home Retention and Liquidation Workout
Options, Home Retention Workout Options

04/08/2015

| Required Notice | Description |
|---|---|
| Notice of Payment Default During the Trial Period Plan | If the borrower defaults on the Trial Period Plan, the notice must<br><br>• inform the borrower that he or she failed to make a Trial Period Plan payment by the end of the month in which it was due and is in default,<br><br>• describe other workout options for which the borrower may be eligible, and<br><br>• identify the steps the borrower must take in order to be considered for other workout options. |
| HAMP Counseling Letter | If the borrower's post-modification total monthly debt ratio is 55% or greater, the servicer must send the borrower a HAMP Counseling Letter stating the following:<br><br>• that he or she must work with a HUD-approved housing counselor on a plan to reduce the ratio below 55%, and<br><br>• the availability and advantages of counseling and directing the borrower to the appropriate HUD website where a list of housing counseling agencies is located.<br><br>The servicer must follow the procedures in *Calculating the Borrower's Post-Modification Total Monthly Debt Ratio* in F-1-18, Processing a Fannie Mae HAMP Modification for calculating the borrower's post- modification total monthly debt ratio. |

**Offering a Trial Period Plan and Completing a Fannie Mae HAMP Modification**

For an MBS mortgage loan, the servicer must also see *Conditions of a First and Second Lien Mortgage Loan Modification for an MBS Mortgage Loan* in D2-3.1-02, Working with an MBS Mortgage Loan for Certain Workout Options.

The servicer must use a two-step process for a HAMP modification, which involves providing a document outlining the terms of the Trial Period Plan and then providing a document outlining the terms of the permanent mortgage loan modification.

The servicer must send an *Evaluation Notice* (see *Sending a Notice of Decision on a Workout Option* in D2-2-05, Receiving a Borrower Response Package for the requirements of the

Part D, Providing Solutions to a Borrower                                        04/08/2015
Subpart 2, Assisting a Borrower Who is Facing Default or in Default
Chapter 3, Fannie Mae's Home Retention and Liquidation Workout
Options, Home Retention Workout Options

*Evaluation Notice*) to document the borrower's Trial Period Plan, which begins on the date described in the following table.

| If the servicer mails the Evaluation Notice to the borrower... | Then the servicer... |
| --- | --- |
| on or before the 15th day of a calendar month | must use the first day of the following month as the first Trial Period Plan payment due date. |
| after the 15th day of a calendar month | must use the first day of the month after the next month as the first Trial Period Plan payment due date. |

For the servicer to offer a Trial Period Plan, the first Trial Period Plan payment due date must be on or before March 1, 2016.

The following table provides the requirements for the length of the Trial Period Plan, which must not change even if the borrower makes scheduled payments earlier than required.

| If the mortgage loan is... | Then the Trial Period Plan must be... |
| --- | --- |
| delinquent | three months long. |
| not delinquent, but the servicer has determined that the borrower's monthly payment is in imminent default | four months long. |

For mortgage loans where the servicer has determined that the borrower's monthly payment is in imminent default, the payment during the Trial Period Plan must be less than the contractual monthly payment in effect prior to the Trial Period Plan.

The servicer must service the mortgage loan during the Trial Period Plan in the same manner as it would service a loan in forbearance.

If the borrower fails to make a Trial Period Plan payment by the last day of the month in which it is due, the borrower is considered to have failed the Trial Period Plan and the servicer must not grant the borrower a permanent Fannie Mae HAMP modification, unless the servicer determines that acceptable mitigating circumstances caused the payment to be late.

The servicer must see E-3.4-01, Suspending Foreclosure Proceedings for Workout Negotiations for the requirements for suspending foreclosure.

For the servicer to convert the Trial Period Plan to a permanent Fannie Mae HAMP modification, the Modification Effective Date must be on or before September 1, 2016.

Part D, Providing Solutions to a Borrower                                   04/08/2015
Subpart 2, Assisting a Borrower Who is Facing Default or in Default
Chapter 3, Fannie Mae's Home Retention and Liquidation Workout
Options, Home Retention Workout Options

The servicer must use the *Home Affordable Modification Agreement* (Form 3157), which must only be revised as authorized in *Summary: Home Affordable Modification Agreement*, to document the terms of the Fannie Mae HAMP modification.

The servicer must ensure that the modified mortgage loan retains its first lien position and is fully enforceable.

Electronic documents and signatures for HAMP modifications are acceptable as long as the electronic record complies with Fannie Mae's requirements. See A2-5.2-01, Storage of Individual Mortgage Loan Files and Records for Fannie Mae's requirements for electronic records.

The servicer must follow the procedures in *Preparing the Loan Modification Agreement* and *Executing and Recording the Loan Modification Agreement* in F-1-18, Processing a Fannie Mae HAMP Modification for preparing, executing, and recording Form 3157.

---

### Processing a Fannie Mae HAMP Modification for a Mortgage Loan with Mortgage Insurance

The servicer must see F-2-07, Mortgage Insurer Delegations for Workout Options for the list of conventional mortgage insurers from which Fannie Mae has obtained delegation of authority on behalf of all servicers, which allows the servicer to process a Fannie Mae HAMP modification without obtaining separate mortgage insurer approval at the company or loan level.

---

### Identifying Loss of Good Standing

If, following a successful Trial Period Plan, a borrower defaults on a HAMP modification (three monthly payments are due and unpaid on the last day of the third month), the mortgage loan is no longer considered to be in "good standing." Once lost, good standing cannot be restored even if the borrower subsequently cures the default.

---

### Communicating with a Borrower Regarding Eligibility for the Expanded Borrower "Pay for Performance" Incentive for a Fannie Mae HAMP Modification

The following table outlines the servicer requirements related to the expanded borrower "pay for performance" incentive.

| ✓ | The servicer must... |
|---|---|
| | Provide written notice of the potential for receipt of the expanded borrower "pay for performance" incentive to a borrower in good standing prior to the fifth anniversary of the Fannie Mae HAMP modification effective date as described in the following table. |

Part D, Providing Solutions to a Borrower
Subpart 2, Assisting a Borrower Who is Facing Default or in Default
Chapter 3, Fannie Mae's Home Retention and Liquidation Workout
Options, Home Retention Workout Options

04/08/2015

| ✓ | The servicer must... | |
|---|---|---|
| | **If the fifth anniversary of the Fannie Mae HAMP modification effective date occurs...** | **Then the servicer must...** |
| | before September 1, 2015 | • provide at least one written notice on or before June 1, 2015; and<br><br>• perform at least one follow-up communication to the written notice using any acceptable communication methods as described in D2-2-01, Achieving Quality Right Party Contact with a Borrower. |
| | on or after September 1, 2015 | provide at least two written notices that are:<br><br>• at least 60 days, but no more than 150 days, prior to the fifth anniversary of the Fannie Mae HAMP modification effective date; and<br><br>• at least 30 days apart. |
| | **Note:** The servicer is authorized to<br><br>• include any notice for the expanded borrower "pay for performance" incentive in other notices sent to the borrower, provided the timing requirements are met;<br><br>• provide other communications in addition to the required written notices to the borrower of the potential for receipt of the expanded borrower "pay for performance" incentive; and<br><br>• include information in the notice indicating that the mortgage loan could be re-amortized if eligible on or after the sixth anniversary of the Fannie Mae HAMP modification effective date, provided the borrower receives the expanded borrower "pay for performance" incentive. | |
| | Include a copy of the *Real Estate Fraud Certification* (Form 720) or U.S. Treasury Department's (Treasury) "Dodd Frank Certification" in the written notice to eligible borrowers, if not already collected.<br><br>**Note:** The servicer must notify the borrower that the servicer must have received an executed Form 720 or Treasury's "Dodd Frank Certification" from the borrower on or before the sixth anniversary of the Fannie Mae HAMP Trial | |

Part D, Providing Solutions to a Borrower                              04/08/2015
Subpart 2, Assisting a Borrower Who is Facing Default or in Default
Chapter 3, Fannie Mae's Home Retention and Liquidation Workout
Options, Home Retention Workout Options

| ✓ | The servicer must... |
|---|---|
|   | Period Plan effective date or September 1, 2015, whichever is later, in order to be eligible for the expanded borrower "pay for performance" incentive. For a Fannie Mae HAMP modification completed on or after April 1, 2015, the servicer is authorized to collect Form 720 before the mortgage loan modification is complete. If the servicer elects to collect Form 720 before the mortgage loan modification is complete, it must be clearly communicated to the borrower that eligibility for and settlement of the mortgage loan modification is not contingent on the submission of an executed Form 720. |

The following table outlines the servicer requirements related to the re-amortization option for a Fannie Mae mortgage loan with a Fannie Mae HAMP modification.

| ✓ | The servicer must ... |
|---|---|
|   | Provide written notice of an option to re-amortize the UPB, excluding deferred principal, over the remaining term of the mortgage loan if at the time of the notice the mortgage loan is in good standing. The written notice must<br><br>• be provided at least 60 days, but no more than 120 days, prior to the sixth anniversary of the Fannie Mae HAMP modification effective date;<br><br>• give the borrower at least 30 days, but no more than 180 days, from the date of the notice to respond to the re-amortization offer;<br><br>• notify the borrower of any changes to principal and interest payments as required by applicable law;<br><br>• specify changes to the payment schedule as a result of the re-amortization and total interest to be paid during the remaining term of the mortgage loan after the sixth anniversary of the Fannie Mae HAMP modification effective date, both with and without the effect of the re-amortization; and<br><br>• include the contact information of the servicer and instruct the borrower to contact the servicer if the borrower has questions or concerns about the re-amortize offer.<br><br>**Note:** The servicer is authorized to include the notice of a re-amortization offer in other notices sent to the borrower, provided the timing requirements are met. |
|   | Apply the same re-amortization conditions to all mortgage loans serviced for Fannie Mae, however, the servicer is authorized to<br><br>• require that the mortgage loan is current at the time of the re-amortization; |

Part D, Providing Solutions to a Borrower                                    04/08/2015
Subpart 2, Assisting a Borrower Who is Facing Default or in Default
Chapter 3, Fannie Mae's Home Retention and Liquidation Workout
Options, Home Retention Workout Options

| ✓ | The servicer must ... |
|---|---|
|   | • require that the borrower receives the expanded borrower "pay for performance" incentive prior to completing the re-amortization; and<br><br>• not to send a notification to an eligible borrower of the option to re-amortize the UPB if the mortgage loan was re-amortized within the previous twelve months. |
|   | Provide the re-amortization at no expense to the borrower once the borrower accepts the re-amortization offer. |
|   | Perform a follow up communication to the initial written notice using any acceptable communication methods as described in D2-2-01, Achieving Quality Right Party Contact with a Borrower. |
|   | Provide estimated amortization schedules upon the borrower's request. |
|   | Determine, in compliance with applicable law, if a written modification agreement is required to re-amortize the mortgage loan. |
|   | Ensure that the mortgage loan maintains its first lien position and is fully enforceable. |

**Handling Fees and Late Charges in Connection with a Fannie Mae HAMP Modification**

The servicer must not charge the borrower administrative fees.

The servicer must waive all late charges, penalties, stop payment fees, or similar charges upon the borrower's conversion to a permanent Fannie Mae HAMP modification.

The servicer will not be reimbursed for the cost of the credit report(s).

The servicer must follow the procedures in *Requesting Reimbursement for Expenses Associated with Workout Options* in F-1-29, Processing a Workout Incentive Fee for advancing funds and requesting reimbursement.

**Servicer Duties and Responsibilities**

The following table outlines the servicer's duties in servicing mortgage loans modified under HAMP.

| ✓ | **In performing the duties incident to the servicing of mortgage loans modified under HAMP, the servicer must...** |
|---|---|
|   | Collect and record the details of all executed mortgage loan modifications including, but not limited to, the following:<br><br>• the original terms of the modified mortgage loan, |

Part D, Providing Solutions to a Borrower                                    04/08/2015
Subpart 2, Assisting a Borrower Who is Facing Default or in Default
Chapter 3, Fannie Mae's Home Retention and Liquidation Workout
Options, Home Retention Workout Options

| ✓ | In performing the duties incident to the servicing of mortgage loans modified under HAMP, the servicer must... |
|---|---|
| | • the modified terms of the modified mortgage loan<br><br>• data supporting the mortgage loan modification decision,<br><br>• updates to payoff information and the last payment date, and<br><br>• additional information and data as may periodically be requested by Fannie Mae.<br><br>All such data must be compiled and reported to Fannie Mae in the form and manner set forth in this Guide. |
| | Interpret the terms of this Guide and any related instructions from the Treasury or Fannie Mae in a reasonable manner to serve the purposes and interests of the United States. |
| | Use any non-public information or assets of the United States or Fannie Mae received or developed in connection with HAMP solely for the purposes of fulfilling its obligations hereunder. |
| | Comply with all lawful instructions or directions received from the Treasury and Fannie Mae. |
| | Develop, enforce, and review for effectiveness at least annually, an internal control program designed to ensure effectiveness of duties in connection with HAMP and compliance with this Guide, to monitor and detect mortgage loan modification fraud, and to monitor compliance with applicable consumer protection and fair lending laws.<br><br>The internal control program must include documentation of the control objectives for HAMP activities, the associated control techniques, and mechanisms for testing and validating the controls. |
| | Provide Fannie Mae with access to all internal control reviews and reports that relate to duties performed under HAMP by the servicer and/or its independent auditing firm. |
| | Supervise and manage any contractor that assists in the performance of services in connection with HAMP. The servicer must remove and replace any contractor that fails to perform and ensure that all of its contractors comply with the terms and provisions of this Guide. The servicer shall be responsible for the acts or omissions of its contractors as if the acts or omissions were those of the servicer. |
| | Ensure compliance with the terms of any program waivers. |

# F-1-18, Processing a Fannie Mae HAMP Modification (11/12/2014)

**Introduction**

This Servicing Guide Procedure contains the following:

- Verifying Occupancy

- Calculating the Monthly Mortgage Payment Ratio

- Using a Standard Net Present Value Test

- Determining the New Modified Mortgage Loan Terms

- Calculating the Borrower's Total Monthly Debt Ratio

- Preparing the Loan Modification Agreement

- Executing and Recording the Loan Modification Agreement

**Verifying Occupancy**

The servicer must evaluate the borrower and the mortgage loan for eligibility for a HAMP modification in accordance with *Determining Eligibility for a Fannie Mae HAMP Modification* in D2-3.2-07, Fannie Mae HAMP Modification.

To verify occupancy, the servicer must take the action described in the following table depending upon the address indicated on the credit report.

| If the credit report... | Then the servicer... |
|---|---|
| lists the property address as the borrower's current residence | is authorized to rely solely on the address indicated on the credit report to verify occupancy. |
| does not indicate the property address as the borrower's current residence | must perform additional due diligence prior to extending a HAMP offer, which must be documented in the mortgage loan file for compliance review purposes. |

**Calculating the Monthly Mortgage Payment Ratio**

The servicer must evaluate the borrower and the mortgage loan for eligibility for a HAMP modification in accordance with *Determining Eligibility for a Fannie Mae HAMP Modification* in D2-3.2-07, Fannie Mae HAMP Modification.

The monthly mortgage payment ratio is the ratio of the borrower's current monthly payment to the borrower's monthly gross income. In the case of co-borrowers, the monthly mortgage payment ratio is the ratio of the borrowers' current monthly payment to the combined monthly gross income of the borrower and co-borrower(s).

The borrower's monthly payment includes the monthly payment of the following items, as applicable:

- principal,

- interest,

- property taxes,

- property (hazard) insurance,

- flood insurance,

- condo association fees,

- HOA fees, and

- any escrow payment shortage amounts subject to the 60–month repayment plan.

> **Note:** When determining the borrower's monthly mortgage payment ratio, the servicer must adjust the borrower's current monthly payment to include the preceding expenses if they are applicable and not already included in the borrower's payment.
>
> The current monthly payment must not include MI premium payments or payments due to holders of subordinate liens. If the borrower has indicated that there are association fees, but has not been able to provide written documentation to verify the fees, the servicer may rely on the information provided by the borrower, if the servicer has made reasonable efforts to obtain the association fee information in writing.

The borrower's monthly gross income is defined as the borrower's monthly income amount before any payroll deductions and includes the following items, as applicable:

- wages and salaries,

- overtime pay,

- commissions,

- fees,

- tips,

- bonuses,

- housing allowances,

- other compensation for personal services,

- Social Security payments (including Social Security received by adults on behalf of minors or by minors intended for their own support), and

- monthly income from annuities, insurance policies, retirement funds, pensions, disability or death benefits, rental income, and other income such as adoption assistance.

> **Note:** The servicer must not consider unemployment insurance benefits or any other temporary sources of income related to employment, such as severance payments, as part of the monthly gross income for mortgage loans being evaluated for a mortgage loan modification.

There is no requirement to refresh income documentation during the remainder of the Trial Period Plan from the date of the Fannie Mae HAMP modification eligibility determination.

A borrower that is being evaluated for a Fannie Mae HAMP modification may elect to submit his or her most recent signed federal income tax return, but is not required to do so. In the event that a borrower does not provide his or her signed federal income tax return including all schedules and forms, the servicer must, in accordance with D2-2-05, Receiving a Borrower Response Package, submit the *Short Form Request for Individual Tax Return Transcript* (IRS 4506T-EZ) or *Request for Transcript of Tax Return* (IRS Form 4506-T), if applicable, to the IRS for processing.

If a tax return or transcript is not available for the most recent tax year, the servicer is authorized to accept any of the following:

- a signed tax return,

- an electronically filed tax return, or

- transcripts for a prior tax year.

However, the servicer must also process the borrower's signed IRS Form 4506-T with the IRS to confirm that the borrower did not file a current tax return. If a borrower is not required to file a tax return, the servicer must have the borrower document why he or she was not required to file a tax return.

The servicer must review the tax return information for all borrowers to help verify income and identify discrepancies. The following table provides the servicers' requirements when tax documentation submitted by the borrower reveals inconsistencies with information previously reported.

| ✓ | The servicer must… |
|---|---|
| | Obtain other documentation to reconcile inconsistencies when the tax information identifies income relevant to the HAMP decision that the borrower did not disclose on the *Uniform Borrower Assistance Form* (Form 710). |
| | Use reasonable business judgment to determine whether income is no longer being earned or has been reduced to the amounts disclosed on Form 710. |
| | Ask the borrower to explain material differences between the federal income tax returns/transcript and Form 710, and document such differences in the mortgage loan file. |

The servicer must not modify a mortgage loan if there is reasonable evidence indicating the borrower submitted income information that is false or misleading, or if the borrower otherwise engaged in fraud in connection with the mortgage loan modification.

**Using a Standard Net Present Value Test**

The servicer must evaluate the borrower and the mortgage loan for eligibility for a HAMP modification in accordance with *Determining Eligibility for a Fannie Mae HAMP Modification* in D2-3.2-07, Fannie Mae HAMP Modification.

The net present value (NPV) model is available on HMPAdmin.com. The servicer will have access to the NPV model as well as the NPV User Guide, which provides detailed guidelines for submitting proposed mortgage loan modification data.

To obtain a property valuation input for the NPV model, servicers may use an AVM, an exterior BPO, or an appraisal. If the servicer is using an AVM, it is authorized to

- use an AVM provided by Fannie Mae or Freddie Mac, provided that the AVM renders a reliable confidence score, or

- rely on its own internal AVM provided that

  – the servicer is subject to supervision by a Federal regulatory agency,

  – the servicer's primary Federal regulatory agency has reviewed the model, and

  – the AVM renders a reliable confidence score.

If an AVM is unable to render a value with a reliable confidence score, the servicer must obtain an assessment of the property value utilizing an exterior BPO or a property valuation method acceptable to the servicer's Federal regulatory supervisor. Such assessment must be rendered in accordance with FDIC's Interagency Appraisal and Evaluation Guidelines.

In all cases, the property valuation used must not be more than 90 days old as of the date that the servicer first evaluated the borrower for a Fannie Mae HAMP Trial Period Plan using the NPV model.

> **Note:** The property valuation will remain valid for the duration and does not need to be updated for any subsequent NPV evaluation.

From time to time, the NPV base model will be updated and a new version will be made available. The servicer will be allowed a grace period to implement each new version of the NPV base model, which will be set forth in the applicable NPV release documentation. In addition, the release documentation will provide guidance as to which NPV model version the servicer should use during the grace period. After the grace period, the servicer must use either the most recent version of the base model or a customized version that meets the requirements for customization outlined in the model documentation.

In the event that a mortgage loan must be run through the NPV model more than once, the servicer should test the mortgage loan using the same major NPV model version each time the borrower is evaluated. All versions of the NPV model are available on HMPAdmin.com.

A servicer with a servicing book of at least $40 billion has the option to create a customized NPV model that uses a set of default rates and redefault rates estimated based on the experience of its own portfolio. When estimating the default and redefault rates, the servicer must take the following into consideration, if feasible:

- current LTV,

- current monthly mortgage loan payment,

- current credit score,

- delinquency status, and

• other loan or borrower attributes.

### Determining the New Modified Mortgage Loan Terms

The servicer must determine the borrower's new modified mortgage loan terms in accordance
with *Determining the Fannie Mae HAMP Modification Terms* in D2-3.2-07, Fannie Mae HAMP
Modification. The servicer must follow the steps in the order provided in the following table
in an effort to achieve a target monthly mortgage payment ratio as close as possible to, without
going below, 31%.

| Step | Servicer Action |
|------|-----------------|
| 1 | Capitalize the arrearage. |
|   | The following are considered as acceptable arrearages for capitalization: |
|   | • accrued interest, |
|   | • out-of-pocket escrow advances to third parties, |
|   | • any required escrow advances that will be paid to third parties by the servicer during the Trial Period Plan, and |
|   | • servicing advances paid to third parties in the ordinary course of business and not retained by the servicer, if allowed by state law. |
|   | **Note:** If applicable state law prohibits capitalization of past due interest or any other amount, the servicer must collect such funds from the borrower over a 60-month repayment period unless the borrower decides to pay the amount upfront. Late charges may not be capitalized and must be waived if the borrower satisfies all conditions of the Trial Period Plan. |
|   | See *Administering an Escrow Account in Connection With a Mortgage Loan Modification* in B-1-01, Administering an Escrow Account and Paying Expenses for additional information. |
| 2 | If necessary, reduce the starting interest rate in increments of 0.125% to get as close as possible to the target monthly mortgage payment ratio. |
|   | **Note:** The starting interest rate is the current interest rate (the note rate) on the mortgage loan. The interest rate floor in all cases is 2%. |

| Step | Servicer Action |
|------|-----------------|
|      | The following table describes how to handle the resulting rate in relation to the Interest Rate Cap, which is the Freddie Mac Weekly Primary Mortgage Market Survey® (PMMS®) Rate for 30-year fixed-rate conforming mortgage loans, rounded to the nearest 0.125%, as of the date that the Loan Modification Agreement is prepared. |

| If the resulting interest rate… | Then the reduced interest rate will be… |
|---------------------------------|------------------------------------------|
| is below the Interest Rate Cap | in effect for the first five years, followed by annual increases of 1% per year, or such lesser amount as may be needed, until the interest rate reaches the Interest Rate Cap, at which time it will be fixed for the remaining mortgage loan term. |
| exceeds the interest rate cap | the permanent interest rate. |

| | |
|---|---|
| | **Note:** If a borrower has an ARM or interest-only mortgage loan, the interest rate will convert to a fixed-interest-rate, fully amortizing mortgage loan. For Fannie Mae ARM loans that provide for a monthly payment option (for example, specified minimum payment, interest-only payment, 30-year fully amortizing payment, or 15-year fully amortizing payment), the payment used to calculate the 31% monthly mortgage payment ratio should be the current payment legally due at the time the servicer determines eligibility regardless of imminent changes in the rate or amount of payment. This payment option must be used in the HAMP modification waterfall to reduce the borrower's monthly mortgage payment ratio as close as possible to, without going below, 31%. |
| 3 | If necessary, extend the term and re-amortize the mortgage loan by up to 480 months from the mortgage loan modification effective date (that is, the first day of the month following the end of the Trial Period Plan) to achieve the target monthly mortgage payment ratio. Negative amortization after the effective date of the mortgage loan modification is prohibited.

**Note:** When the mortgage loan is secured by a property where the title is held as a leasehold estate, the term of the leasehold estate must not expire prior to the date that is five years beyond the new maturity date of the modified mortgage loan. In the event that the current term of the leasehold estate would expire prior to such date, the term of the leasehold estate must |

Part F, Servicing Guide Procedures, Exhibits, and Quick Reference
Materials
Chapter 1, Servicing Guide Procedures

04/08/2015

| Step | Servicer Action |
|------|-----------------|
|  | be renegotiated to satisfy this requirement for the loan to be eligible for the Fannie Mae HAMP modification. |
| 4 | If necessary, provide principal forbearance to achieve the target monthly mortgage payment ratio.<br><br>The principal forbearance amount is non-interest-bearing and non-amortizing. The amount of principal forbearance will result in a balloon payment fully due and payable upon the earliest of the borrower's transfer of the property, payoff of the interest-bearing UPB, or maturity of the mortgage loan.<br><br>For mortgage loans eligible for a Fannie Mae HAMP modification, the servicer is not required to forbear more than the greater of<br><br>• 30% of the UPB of the mortgage loan (after any capitalization per Step 1), or<br><br>• an amount resulting in a modified interest-bearing balance that would create a current mark-to-market LTV ratio equal to 100%. |

### Calculating the Borrower's Total Monthly Debt Ratio

The servicer must send the borrower a HAMP Counseling Letter in accordance with *Communicating with a Borrower Regarding a Fannie Mae HAMP Modification* in D2-3.2-07, Fannie Mae HAMP Modification.

The borrower's total monthly debt ratio is the ratio of the borrower's monthly gross expenses divided by the borrower's monthly gross income (as described in *Calculating the Monthly Mortgage Payment Ratio*).

The servicer must obtain a credit report for each borrower or a joint report for a married couple who are co-borrowers to validate installment debt and other liens. In addition, the servicer must consider information concerning monthly obligations obtained from the borrower either verbally or in writing. Monthly gross expenses equal the sum of the monthly charges listed in the following table, as applicable.

| Type of Monthly Expense | Additional Information |
|--------------------------|------------------------|
| Monthly mortgage loan payment | The monthly payment, including:<br><br>• MI premiums,<br><br>• taxes, |

| Type of Monthly Expense | Additional Information |
|---|---|
|  | • property insurance, <br><br> • homeowners' or condo association fee payments, and <br><br> • assessments related to the property whether or not they are included in the monthly payment. |
| Monthly payment on all closed-end subordinate mortgage loans | None |
| Payments on all installment debts with more than ten months of payments remaining | Include debts that are in a period of either deferment or forbearance. <br><br> When payments on an installment debt are not on the credit report or are listed as deferred, the servicer must obtain documentation to support the payment amount included in the monthly debt payment. If no monthly payment is reported on a student loan that is deferred or is in forbearance, the servicer must obtain documentation verifying the proposed monthly payment amount, or use a minimum of 1.5% of the balance. |
| Monthly payments on revolving or open-end accounts | Include regardless of the balance. <br><br> In the absence of a stated payment, the payment must be calculated by multiplying the outstanding balance by 3%. |
| Monthly payments on a HELOC | Must be included in the payment ratio using the minimum monthly payment reported on the credit report. <br><br> If the HELOC has a balance but no monthly payment is reported, the servicer must obtain documentation verifying the payment amount, or use a minimum of 1% of the balance. |

| Type of Monthly Expense | Additional Information |
|---|---|
| Alimony, child support, and separate maintenance payments | Only include when more than ten months of payments are remaining and if supplied by the borrower. |
| Monthly auto lease payments | Include regardless of the number of payments remaining. |
| Aggregate negative net rental income from all investment properties owned | Only include if supplied by the borrower. |
| Monthly mortgage loan payments for a second home | Include PITI and, when applicable, mortgage insurance, leasehold payments, HOA dues, and condo unit or co-op unit maintenance fees, excluding unit utility charges. |

**Preparing the Loan Modification Agreement**

The servicer must complete the mortgage loan modification in accordance with *Offering a Trial Period Plan and Completing a Fannie Mae HAMP Modification* in D2-3.2-07, Fannie Mae HAMP Modification.

The servicer must prepare the *Home Affordable Modification Agreement* (Form 3157) early enough in the Trial Period Plan to allow sufficient processing time so that the mortgage loan modification becomes effective on the first day of the month following the Trial Period Plan (Modification Effective Date). The servicer is authorized to, at its discretion, complete the Loan Modification Agreement so the mortgage loan modification becomes effective on the first day of the second month following the final Trial Period Plan month to allow for sufficient processing time. However, the servicer must treat all borrowers the same in applying this option by selecting, at its discretion and evidenced by a written policy, the date by which the final Trial Period Plan payment must be submitted before the servicer applies this option ("cut-off date"). The cut-off date must be after the due date for the final Trial Period Plan payment set forth in the *Evaluation Notice*.

> **Note:** If the servicer elects this option, the borrower will not be required to make an additional Trial Period Plan payment during the month (the "interim month") in between the final Trial Period Plan month and the month in which the mortgage loan modification becomes effective. For example, if the last Trial Period Plan month is March and the servicer elects the option described above, the borrower is not required to make any payment during April, and the mortgage loan modification becomes effective, and the first payment under the Loan Modification Agreement is due, on May 1.

The servicer may encounter circumstances where a co-borrower signature is not obtainable for the Loan Modification Agreement, for reasons such as mental incapacity, military deployment, or contested divorce. When a co-borrower's signature is not obtainable and the servicer decides to continue with the HAMP mortgage loan modification, the servicer must appropriately document the basis for the exception in the servicing records.

### Executing and Recording the Loan Modification Agreement

The servicer must complete the mortgage loan modification in accordance with *Offering a Trial Period Plan and Completing a Fannie Mae HAMP Modification* in D2-3.2-07, Fannie Mae HAMP Modification.

In order to ensure that the modified mortgage loan retains its first lien position and is fully enforceable, the servicer must take the actions described in the following table.

| ✓ | The servicer must… |
|---|---|
| | Ensure that the Loan Modification Agreement is executed by the borrower(s). |
| | Ensure that, in the following circumstances, the Loan Modification Agreement is in recordable form:<br><br>• if state or local law requires a mortgage loan modification agreement be recorded to be enforceable;<br><br>• if the amount capitalized is greater than $50,000 (aggregate capitalized amount of all modifications of the mortgage loan completed under Fannie Mae's mortgage loan modification options);<br><br>• if the final interest rate on the modified mortgage loan is greater than the pre-modified interest rate in effect on the mortgage loan;<br><br>• if the remaining term on the mortgage loan is less than or equal to ten years and the servicer is extending the term of the mortgage loan more than ten years beyond the original maturity date; or<br><br>• if the servicer's practice for modifying mortgage loans in its portfolio is to create mortgage loan modification agreements in recordable form. |
| | Ensure that all real estate taxes and assessments that could become a first lien are current, especially those for manufactured homes taxed as personal property, personal property taxes, condo/HOA fees, utility assessments (such as water bills), ground rent, and other assessments. |

| ✓ | The servicer must… |
|---|---|
| | Obtain a title endorsement or similar title insurance product issued by a title insurance company if<br><br>• the amount capitalized is greater than $50,000 (aggregate capitalized amount of all modifications of the mortgage loan completed under Fannie Mae's mortgage loan modification options); or<br><br>• the final interest rate on the modified mortgage loan is greater than the pre-modified interest rate in effect on the mortgage loan. |
| | Record the executed Loan Modification Agreement if<br><br>• state or local law requires the mortgage loan modification agreement be recorded to be enforceable;<br><br>• the amount capitalized is greater than $50,000 (aggregate capitalized amount of all modifications of the mortgage loan completed under Fannie Mae's mortgage loan modification options);<br><br>• the final interest rate on the modified mortgage loan is greater than the pre-modified interest rate in effect on the mortgage loan; or<br><br>• the remaining term on the mortgage loan is less than or equal to ten years and the servicer is extending the term of the mortgage loan more than ten years beyond the original maturity date. |

The servicer is authorized to execute the Loan Modification Agreement on behalf of MERS and, if applicable, submit it for recordation.

---

Part B, Escrow, Taxes, Assessments, and Insurance
Chapter 8, Mortgage Insurance, Conventional Mortgage Insurance
Requirements

04/08/2015

# ☑ B-8.1-04, Termination of Conventional Mortgage Insurance (11/12/2014)

**Introduction**

This topic contains the following:

- Automatic Termination of Conventional Mortgage Insurance

- Borrower-Initiated Termination of Conventional Mortgage Insurance Based on Original Property Value

- Borrower-Initiated Termination of Conventional Mortgage Insurance Based on Current Property Value

- Terminating the Conventional Mortgage Insurance for a Modified Mortgage Loan

- Finalizing and Reporting the Mortgage Insurance Termination

- Performing an Escrow Analysis Upon Termination of Mortgage Insurance

**Automatic Termination of Conventional Mortgage Insurance**

The servicer must not charge the borrower a fee for processing an automatic termination.

The servicer must take the following steps to terminate the mortgage insurance, as applicable:

**1. Determine when the mortgage insurance is due to automatically terminate.**

The servicer's review must determine whether

- a mortgage loan is eligible for automatic termination of mortgage insurance based on the scheduled termination date (or the mid-point of the amortization period, as applicable), and

- the borrower's payments are current on that date.

The following table describes the timing of the automatic termination.

| If the mortgage loan closed... | Then the mortgage insurance is eligible to be terminated... |
|---|---|
| on or after July 29, 1999 and is secured by a one-unit principal residence or second home | on the applicable termination date, provided the borrower's payments are current on the termination date. |

Part B, Escrow, Taxes, Assessments, and Insurance                                    04/08/2015
Chapter 8, Mortgage Insurance, Conventional Mortgage Insurance
Requirements

| If the mortgage loan closed... | Then the mortgage insurance is eligible to be terminated... |
|---|---|
| | The applicable termination date is<br><br>• the date the principal balance of the mortgage loan is first scheduled to reach 78% of the original value of the property, or<br><br>• the first day of the month following the date the mid-point of the mortgage loan amortization period is reached, if the scheduled LTV ratio for the mortgage loan does not reach 78% before the mid-point. |
| before July 29, 1999, regardless of the property type; or<br><br>on or after July 29, 1999 and is secured by a one- to four- unit investment property or a two- to four-unit principal residence | on the first day of the month after the date that is the mid-point of the original amortization period, provided the borrower's payments are current on that date. |

**2. Verify that the borrower's payments are considered current.**

The borrower's payments are considered current if the payment due in the month preceding the scheduled termination date, or the mid-point of the amortization period, as applicable, and all outstanding late charges were paid by the end of the month in which the payment was due.

The following table describes the action the servicer must take depending upon the status of the borrower's payments.

| If the borrower's payments are... | Then the servicer... |
|---|---|
| current and the mortgage loan is eligible for automatic termination based on its scheduled amortization | must terminate the mortgage insurance immediately. |
| current and the mortgage loan is eligible for automatic termination based on the mid-point of the amortization period | must terminate the mortgage insurance no later than the first day of the month following the mid-point date. |
| not current | must not terminate the mortgage insurance, even if the other eligibility criteria for automatic termination are met.<br><br>The servicer must |

Part B, Escrow, Taxes, Assessments, and Insurance
Chapter 8, Mortgage Insurance, Conventional Mortgage Insurance
Requirements

04/08/2015

| If the borrower's payments are... | Then the servicer... |
|---|---|
| | • notify the borrower within 30 days after the termination date that the mortgage insurance was not automatically terminated because the payments were not current, and<br><br>• terminate the mortgage insurance immediately if the borrower's payments are current at the time of a subsequent review. |

**Borrower-Initiated Termination of Conventional Mortgage Insurance Based on Original Property Value**

If the borrower's written request for termination includes all of the information necessary to reach a decision, the servicer must take the following steps to evaluate the request:

**1. Verify that the LTV ratio, or CLTV ratio if applicable, of the mortgage loan meets Fannie Mae's eligibility criteria.**

The following table describes the LTV ratio, or CLTV ratio if applicable, eligibility criteria.

| If the mortgage loan is... | Then... |
|---|---|
| a first lien mortgage loan closed on or after July 29, 1999 and is secured by a one-unit principal residence or second home | the LTV ratio eligibility criterion is met on the date the mortgage loan balance is first scheduled to reach 80% (or actually reaches 80%) of the original value of the property. |
| a first lien mortgage loan closed before July 29, 1999 and is secured by a one-unit principal residence or second home delivered under a negotiated contract that prohibits the cancellation of mortgage insurance until a specified term has elapsed | the LTV ratio eligibility criterion is met on the date that the mortgage loan balance actually reaches 75% of the original value of the property, if the mortgage loan is seasoned for two or more years, even if the original specified term has not elapsed. |
| any other first lien mortgage loan | the LTV ratio eligibility criterion is met on the date the outstanding principal balance of the mortgage loan reaches the applicable percentage of the original value of the property, which is as follows:<br><br>• 80% for a mortgage loan secured by a one- unit principal residence or second home. |

Part B, Escrow, Taxes, Assessments, and Insurance
Chapter 8, Mortgage Insurance, Conventional Mortgage Insurance
Requirements

04/08/2015

| If the mortgage loan is... | Then... |
|---|---|
| | • 70% for a mortgage loan secured by a one- to four-unit investment property or a two- to four-unit principal residence. |
| a second lien mortgage loan | the CLTV eligibility criterion is met on the date the sum of the outstanding principal balances of all mortgage loans secured by the property reaches 70% of the value of the property at the time the second lien mortgage loan was originated. |

**2. Verify that the borrower has an acceptable payment record.**

An acceptable payment record is achieved when the mortgage loan

• is current when the termination is requested, which means that the mortgage loan payment for the month preceding the date of the termination request and all outstanding late charges are paid;

• has no payment 30 or more days past due in the last 12 months; and

• has no payment 60 or more days past due in the last 24 months.

The 12- and 24-month payment histories must be measured backward from the date indicated as follows:

• For mortgage loans secured by one-unit principal residences or second homes originated on or after July 29, 1999, the date is the later of

  – the date the balance is first scheduled to reach, or actually reaches, 80% of the original property value, or

  – the date the borrower actually requests termination.

• For all other mortgage loans, the date on which the mortgage insurance terminates.

**3. Verify that the value of the property is not less than its value at origination.**

The servicer must warrant that the current property value is at least equal to the original property value. The servicer may choose to order a BPO, a certification of value, or a new appraisal to verify the current property value, in which case it must select the broker or appraiser, order the valuation, and receive the results directly.

The servicer must follow the procedures in *Verifying Property Value for MI Termination* in F-1-02, Escrow, Taxes, Assessments, and Insurance for details on Fannie Mae's requirements.

Part B, Escrow, Taxes, Assessments, and Insurance
Chapter 8, Mortgage Insurance, Conventional Mortgage Insurance
Requirements

04/08/2015

The servicer's action depends on the current property value as described in the following table.

| If the current value of the property is... | Then the servicer... |
| --- | --- |
| at least equal to the original property value | must terminate the mortgage insurance and notify the borrower. |
| less than the original property value | must deny the borrower's request for termination unless the property value is based on a new appraisal and the borrower pays down the mortgage loan balance to the point that it satisfies Fannie Mae's applicable LTV or CLTV ratio eligibility criterion. |

The servicer must notify the borrower if the request for termination is denied and provide the grounds for denial, including the results of any BPO, certification of value, or appraisal that the servicer ordered. This notice must be sent within 30 days of the date that

- the servicer received the borrower's request for termination; or

- the servicer received the BPO, certification of value, or new appraisal, if applicable.

**Borrower-Initiated Termination of Conventional Mortgage Insurance Based on Current Property Value**

If the borrower's written request for termination includes the information necessary to reach a decision, the servicer must evaluate the request based on the following:

**1. Verify the LTV ratio, or CLTV ratio if applicable, of the mortgage loan meets Fannie Mae's eligibility criteria.**

Satisfaction that the mortgage loan meets the applicable LTV ratio or CLTV ratio eligibility criterion must be evidenced by a new appraisal based on an inspection of both the interior and exterior of the property and prepared in accordance with Fannie Mae's appraisal standards for new mortgage loan originations. The servicer must select an appraiser, order the appraisal, receive the results directly, and send a copy of the appraisal to the borrower.

The following table describes the LTV ratio, or CLTV ratio if applicable, eligibility criteria.

| If the mortgage loan is... | Then... |
| --- | --- |
| a first lien mortgage loan secured by a one-unit principal residence or second home | the LTV ratio must be |

| If the mortgage loan is... | Then... |
|---|---|
| | • 75% or less, if the seasoning of the mortgage loan is between two and five years.<br><br>• 80% or less, if the seasoning of the mortgage loan is greater than five years.<br><br>If Fannie Mae's minimum two-year seasoning requirement is waived because the property improvements made by the borrower increased the property value, the LTV ratio for the first lien mortgage loan must be 75% or less. |
| a first lien mortgage loan secured by a one- to four-unit investment property or a two- to four-unit principal residence | the LTV ratio must be 70% or less, regardless of the seasoning of the mortgage loan. |
| a second lien mortgage loan | the CLTV ratio must be 70% or less, regardless of the seasoning of the mortgage loan. |

**2. Verify the borrower has an acceptable payment record.**

An acceptable payment record is achieved when the mortgage loan

• is current when the termination is requested, which means that the mortgage loan payment for the month preceding the date of the termination request and all outstanding late charges are paid;

• has no payment 30 or more days past due in the last 12 months; and

• has no payment 60 or more days past due in the last 24 months.

If a mortgage loan has been assumed, the servicer must not agree to the termination unless the current borrower has a 24-month payment history for the mortgage loan.

The servicer must notify the borrower if the request for termination is denied and provide the reasons for denial, including the results of the appraisal the servicer ordered. This notice must be sent within 30 days after the later of

• the date the servicer received the borrower's request for termination, or

• the date the servicer received the appraisal.

Part B, Escrow, Taxes, Assessments, and Insurance                              04/08/2015
Chapter 8, Mortgage Insurance, Conventional Mortgage Insurance
Requirements

**Terminating the Conventional Mortgage Insurance for a Modified Mortgage Loan**

The mortgage insurance termination eligibility criteria must be based on the terms and conditions
of the modified mortgage loan. The servicer must

- use the amortization schedule of the modified mortgage loan and the property value at the time
  of the mortgage loan modification, and

- adhere to applicable state law related to the type of valuation to use to determine the property
  value at the time of the mortgage loan modification. A BPO or a new appraisal may be used,
  or an AVM as long as the AVM provides a reliable confidence score.

**Finalizing and Reporting the Mortgage Insurance Termination**

The servicer must automatically terminate the mortgage insurance on the applicable termination
date and must approve a borrower-initiated request for termination if the previously stated
requirements for the applicable type of mortgage insurance termination are met.

The servicer must not collect mortgage insurance premiums as part of the borrower's mortgage
loan payment more than 30 days after the later of

- the date the servicer received the borrower's request for termination (or the scheduled
  termination date or the mid-point of the amortization period, as applicable, for an automatic
  termination), or

- the date all eligibility criteria for termination were satisfied.

The following table provides the requirements for finalizing and reporting the termination of the
mortgage insurance.

| ✓ | The servicer must... |
|---|---|
|   | Reduce the borrower's mortgage loan payment by the amount that was being collected to pay the mortgage insurance premium within the required time frame, unless the mortgage insurance premium was financed as part of the mortgage loan amount. |
|   | Notify the borrower within 30 days after termination that the mortgage insurance has been terminated and, if applicable, indicate that no further escrow deposits for mortgage insurance will be due from the borrower. |
|   | Forward any unearned mortgage insurance premium refund to the borrower as soon as it is received from the mortgage insurer, but no later than 45 days after the mortgage insurance termination date. |

Part B, Escrow, Taxes, Assessments, and Insurance
Chapter 8, Mortgage Insurance, Conventional Mortgage Insurance
Requirements

04/08/2015

| ✓ | The servicer must... |
|---|---|
| | Report the termination of mortgage insurance to Fannie Mae with the next Fannie Mae investor reporting system reports that it submits after the termination date. See *Reporting Discontinuance of Mortgage Insurance* in the *Investor Reporting Manual* for additional information. |

**Performing an Escrow Analysis Upon Termination of Mortgage Insurance**

The following table outlines the actions that the servicer must take depending on whether it performs a new escrow analysis at the time the mortgage insurance is terminated.

| If the servicer... | Then... |
|---|---|
| does not perform a new escrow analysis | the servicer must advise the borrower that escrow deposits accumulated to pay off the next mortgage insurance premium will be considered in the borrower's next escrow account analysis. |
| performs a new escrow analysis | the resulting change in the mortgage loan payment must not equal the amount previously escrowed for the mortgage insurance premium, should other escrow items need to be adjusted. |