# EXHIBIT A-1

# PRIVATE MORTGAGE INSURANCE DISCLOSURE
## (Fixed Rate Mortgages)

Date: August 24, 2006

| BORROWER(S) NAME AND PROPERTY ADDRESS | LENDER(S) NAME AND ADDRESS |
|---|---|
| Curt Rice<br>97 Stephanie Way<br>Charles Town, WV 25414 | HomeAmerican Mortgage Corporation<br>7595 Technology Way<br>Denver, CO 80237 |

| LOAN NO. | PMI CERTIFICATE NO. |
|---|---|

You are obtaining a mortgage loan that requires private mortgage insurance ("PMI"). PMI protects lenders and others against financial loss when borrowers default. Charges for the insurance are added to your loan payments.

Under certain circumstances, federal law gives you the right to cancel PMI or requires that PMI automatically terminate. This disclosure describes when cancellation and termination may occur. Please note that PMI is *not* the same as property/casualty insurance—such as homeowner's or flood insurance—which protects you against damage to the property. Cancellation or termination of PMI does *not* affect any obligation you may have to maintain other types of insurance.

In this disclosure, "loan" means the mortgage loan you are obtaining; "you" means the original borrower (or his or her successors or assigns); and "property" means the property securing the mortgage loan.

**Initial Amortization Schedule**
An amortization schedule showing the principal and interest due on your loan, along with the balance remaining after each scheduled payment, is attached for your reference.

**Borrower Requested Cancellation of PMI**
You have the right to request that PMI be canceled on or after the following dates:
(1)   The date the principal balance of your loan is first *scheduled* to reach 80% of the original value of the property. This date is      November 01, 2014      . (If your loan has a balloon feature with a fixed interest rate and no conditional right to refinance, this date will not be reached before your loan matures.)
(2)   The date the principal balance *actually* reaches 80% of the original value of the property.

"Original value" means the lesser of the contract sales price of the property or the appraised value of the property at the time the loan was closed. If this loan refinances an existing loan secured by the property, "original value" means the appraised value relied on by the lender to approve this loan.

PMI will only be canceled if all the following conditions are satisfied:
(1)   you submit a written request for cancellation;
(2)   you have a good payment history;
(3)   you are current on the payments required by your loan; and
(4)   we receive, if requested and at your expense, evidence satisfactory to the holder of your loan that the value of the property has not declined below its original value, and certification that there are no subordinate liens on the property.

A "good payment history" means no payments 60 or more days past due within two years and no payments 30 or more days past due within one year of the later of (a) the cancellation date, or (b) the date you submit a request for cancellation.

**Automatic Termination of PMI**
If you are current on your loan payments, PMI will automatically terminate on the date the principal balance of your loan is first *scheduled* to reach 78% of the original value of the property. This date is      January 01, 2016      . (If your loan has a balloon feature with a fixed interest rate and no conditional right to refinance, this date will not be reached before your loan matures.) If you are *not* current on your loan payments as of that date, PMI will automatically terminate on the first day of the month immediately following the date you thereafter become current on your payments.

**Exceptions to Cancellation and Automatic Termination**
The cancellation and automatic termination requirements described above do not apply to certain loans that may present a higher risk of default. Your loan, however, does not fall into this category. Accordingly, the cancellation and automatic termination provisions described above apply to your loan.

By signing below, I/we hereby acknowledge receipt of this Private Mortgage Insurance Disclosure.

| Borrower Curt Rice | Date 8/24/06 | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

© 1999, 2001 America's Community Bankers®, Mortgage Bankers Association of America
ITEM 9500LO (9107)

GreatDocs™
To Order Call: 1-800-968-5775

# EXHIBIT A-2

Case 3:14-cv-00093-GMG   Document 23-2   Filed 04/30/15   Page 4 of 11   PageID #: 241

**Section 2a: Home Affordable Modification Agreement (Servicer Copy 1)**



BankofAmerica

Home Loans

Investor Loan #

After Recording Return To:
BAC Home Loans Servicing, LP
Home Retention Division
4500 Amon Carter Blvd.
Fort Worth, TX 76155

610     MOD 001 002

This document was prepared by BAC Home Loans Servicing, LP

[Space Above This Line For Recording Data]

## HOME AFFORDABLE MODIFICATION AGREEMENT
### (Step Two of Two-Step Documentation Process)

Borrower ("I")[1]: CURT RICE
Lender ("Lender"): BAC Home Loans Servicing, LP
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): August 24, 2006
Loan Number:
Property Address ("Property"): 97 STEPHANIE WAY, CHARLES TOWN, WV 25414
(See Exhibit A for Legal Description, if and when recording becomes necessary)
MERS:
MERS is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage or Deed of Trust on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.   My Representations. I certify, represent to Lender and agree:
    A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B.   I live in the Property as my principal residence, and the Property has not been condemned;

---

[1]. If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -- Single Family -- Form 3157  3/09 (page 1 of 7)
6110 08/09



Case 3:14-cv-00093-GMG   Document 23-2   Filed 04/30/15   Page 5 of 11   PageID #: 242

C. There has been no change in the ownership of the Property since I signed the Loan Documents;

D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on the 1st day of September, 2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition of this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 1st day of September, 2010.

A. The new Maturity Date will be: September 1, 2036.

B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be $340,123.01 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Form 3157  3/09 (page 2 of 7)
6110  09/09



Case 3:14-cv-00093-GMG   Document 23-2   Filed 04/30/15   Page 6 of 11   PageID #: 243

C. Interest at the rate of 3.000% will begin to accrue on the New Principal Balance as of August 1, 2010 and the first new monthly payment on the new principal balance will be due on September 1, 2010. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------|--------------------------------|------------------------|-------------------|----------------------------|
| 1-5 | 3.000% | August 01, 2010 | $1,567.99 | $444.46 May adjust periodically | $2,012.45 May adjust periodically | September 01, 2010 | 60 |
| 6 | 4.000% | August 01, 2015 | $1,720.35 | May adjust periodically | May adjust periodically | September 01, 2015 | 12 |
| 7-27 | 4.375% | August 01, 2016 | $1,777.17 | May adjust periodically | May adjust periodically | September 01, 2016 | 241 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting any unpaid interest to be added to the outstanding principal balance.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THE LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. Additional Agreements. I agree to the following:

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Form 3157 3/09 (page 3 of 7)
8116 08/09



Case 3:14-cv-00093-GMG   Document 23-2   Filed 04/30/15   Page 7 of 11   PageID #: 244

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

Funds for Escrow Items:
I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Form 3157  3/09 (page 4 of 7)
0119  02/09



Case 3:14-cv-00093-GMG   Document 23-2   Filed 04/30/15   Page 8 of 11  PageID #: 245

Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.]

E.   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.   That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.   That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family –  Form 3157  3/09 (page 5 of 7)
0110 08/09



such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. I understand that the mortgage insurance premiums on my loan may increase as a result of the capitalization which will result in a higher monthly payment. Furthermore, the date on which I may request cancelation of mortgage insurance may change as a result of the higher unpaid principal balance.

P. I also agree to allow Lender to attach an Exhibit A to this loan modification which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk 19s Office to allow for recording if and when recording becomes necessary for Lender.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Form 3157  3/09 (page 6 of 7)
8118  08/09



The Lender and I have executed this Agreement.

Mortgage Electronic Registration Systems, Inc. -
Nominee For BAC Home Loans Servicing, LP

By: _____

Date 9-8-10

_____
CURT RICE

Date 9/8/'10

Date _____

Commonwealth of Virginia
County of _Loudon_
The Foregoing Instrument was Acknowledged
Before me this _8_ day of _September_ 2010
by _Jonathan Walker   Curt Rice_
Notary Public: _Jonathan Walker_
My Commission Expires: _8/31/13_
My Notary ID No. Is: _7277272_



JONATHAN WALKER
Notary Public
Commonwealth of Virginia
7277272
My Commission Expires Aug 31, 2013

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Form 3157  3/09 (page 7 of 7)
8118  08/09

The Lender and I have executed this Agreement

*James L. Smith*

Mortgage Electronic Registration Systems, Inc. -
Nominee For BAC Home Loans Servicing, LP

By: _____
        James L. Smith

_____          _____
Date          **SEP 2 3 2010**                              Date

                                                              _____
                                                              Date

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Form 3157  3/09 (page 7 of 7)
                                                                                                                    8110 08/09