UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CURT RICE,**

  **Plaintiff,**

v.            **CIVIL ACTION NO. 3:14-CV-93 (Groh)**

**GREEN TREE SERVICING, LLC,**

  **Defendant.**

## GREEN TREE SERVICING, LLC'S REPLY IN
## SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Green Tree Servicing, LLC ("Green Tree") replies in support of its Motion for Summary Judgment[1] as follows:

A. *Green Tree relies on the Homeowner's Protection Act of 1998, as amended, the Emergency Economic Stabilization Act of 2008, §§ 101 and 109 and the Directives of the U.S. Treasury regarding HAMP, which should be harmonized to determine how the Automatic Termination Date is to be recalculated after loan modification.*

The issue in this case is which valuation of Plaintiff's Property should be used to calculate, after loan modification, the Automatic Termination Date, i.e., the date on which Plaintiff's Private Mortgage Insurance ("PMI") will automatically terminate under the HPA. Plaintiff contends it should be the value as of origination of Plaintiff's Loan in 2006. Green Tree contends it should be the value as of the time of Plaintiff's loan modification in 2010.

Plaintiff argues in his Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response") (dkt # 26), as he did in his Memorandum in Support of Motion for Summary Judgment ("Plaintiff's Memorandum") (dkt # 22-1), that Green Tree is mistakenly

---

[1] Capitalized terms in Green Tree's response shall have the same mean as given such terms in Green Tree's Memorandum of Law in Support of Its Motion for Summary Judgment ("Green Tree's Memorandum") (dkt # 24).

relying on the Fannie Mae Guidelines for its position, and further that the Guidelines conflict with the provisions of the HPA. Therefore, Plaintiff argues, pursuant to 12 U.S.C. § 4908, the Guidelines must be ignored to adopt Plaintiff's position for calculation of the Automatic Termination Date after loan modification. (dkt # 22-1, pg. 13 and dkt # 26, pp. 2-4.)

Green Tree is not relying on the Fannie Mae Guidelines. Green Tree is relying on – and complying with -- provisions of the HPA, 12 U.S.C. § 4901 *et seq.*, provisions of the Emergency Economic Stabilization Act of 2008, §§ 101 and 109, which authorized and required the Secretary of the U.S. Treasury to implement a plan for providing loan modifications to homeowners, taking into account the "net present value to the taxpayer," and U.S. Treasury's Directive 09-01 which implemented HAMP. *See* Green Tree Servicing, LLC's Response in Opposition to Plaintiff's Motion for Summary Judgment ("Green Tree's Response") (dkt # 25, pp. 1-4.) The Fannie Mae Servicing Guidelines implement the statutory requirements of the HPA and the directives of the U.S. Treasury for HAMP. Green Tree's interpretation of the statutes harmonizes the HPA, HAMP and the Guidelines that implement the requirements of both statutes.

In contrast, Plaintiff's interpretation finds conflict between the HPA and the Guidelines, and between the HPA and HAMP. This is because Plaintiff would argue that the value of the Property at loan modification -- which clearly is required to conduct the Net Present Value test required under HAMP -- should be ignored. Plaintiff makes this argument despite § 4902(d) of the HPA, which requires recalculation of a termination date after loan modification using the "modified terms and conditions" of the loan. (dkt # 24, pp. 13-14.) Plaintiff's argument does not harmonize the statutes, nor the statutes with the Guidelines, and therefore, should be rejected.

    B.    *Both the terms and conditions of the modified loan should be used to recalculate the Automatic Termination Date after loan modification.*

Section 4902(d) of the HPA clearly states that after loan modification, the termination date "shall be recalculated to reflect the modified terms and conditions of such loan." The terms and conditions of a loan modification that are required to calculate a new Automatic Termination Date include the (i) principal balance after modification; (ii) modified interest rate; (iii) new maturity date); (iv) first payment due date under the modification; and (v) property value as of modification. Using these modified terms and conditions, Plaintiff's Automatic Termination Date is recalculated to be February 1, 2020. (dkt# 24, pp. 12-13.)

Plaintiff adopts a portion of this argument, holding that the first four items should be used to create a new amortization schedule, but he contends the property value should be the value as of origination of the loan. Plaintiff makes several arguments for his position.

Plaintiff argues the definition of "original value" at § 4901(12), defining value "at the time at which the subject residential mortgage transaction was consummated," cannot be modified by § 4902(d) to reflect the value as of the time of loan modification. However, he argues, the definition of "initial amortization schedule" at § 4901(5), defined as a schedule established "at the time at which a residential mortgage transaction is consummated" <u>can</u> be modified by § 4902(d) to mean a schedule established at the time of loan modification. *See* discussion in dkt # 25, pp. 2-3 and dkt # 24, pp. 13-15. Plaintiff's interpretation is internally inconsistent and as such, should be rejected.

Plaintiff devotes considerable attention to the definition of "condition" in an attempt to argue that property value is not a condition to be met for loan modification. Plaintiff's Response (dkt # 26), pp. 8-12. This is not rocket science. It is common knowledge that several underwriting conditions must be met to obtain approval for a mortgage loan – and a loan

3

modification, e.g., borrower's income, unencumbered title to the property that will serve as collateral, borrower's assets, credit score, and property value. These are all considered *as of the time the loan decision is made*.

As Plaintiff suggests, conditions may change after the loan is made, e.g., borrower's income. (dkt # 26, pp. 11-12.) But this does not change the terms of the loan, it does not affect enforceability of the loan and security documents, and it does not change the fact that the borrower's income, an underwriting condition *as of the time the loan was approved*, was required to approve the loan.

Plaintiff would argue that property value is a hidden condition because it is not recited in the loan modification documents. (dkt # 6, pp. 6-7.) Property value is not a *hidden* condition of the loan modification process, nor has Green Tree ever argued as such. Many conditions are not recited in the final loan documents – income, assets, credit score, etc. This does not make them *hidden* conditions.

Moreover, in this case, Plaintiff knew a property value was obtained at the time he applied for a loan modification, but he believed the property value was not used in the modification. Attached as **Exhibit A** is an email string between counsel for Green Tree and Plaintiff at the time that Plaintiff was acting *pro se*. Plaintiff specifically states that "Bank of America [the prior servicer] did a valuation on my home in 2010." But Plaintiff argued the valuation was not used in his modification.

Plaintiff disputes use of the 2013 Property value for purposes of determining the Automatic Termination Date after the 2010 loan modification, suggesting 2013 was a "random" year for valuing the Property, and implying that use of an Automated Valuation Model ("AVM") was inappropriate. (dkt # 26, pg. 16.)

4

Use of the 2013 Property value was explained in Green Tree's Memorandum. (dkt # 24, ¶¶ 16 – 19). The year 2013 is not a random year. Servicing of Plaintiff's Loan was transferred to Green Tree effective June 1, 2013. (dkt #24, ¶ 11 of the Stipulated Facts.) Plaintiff requested termination of his PMI in August of 2013. (dkt # 29, redacted Ex. A to dkt # 25, ¶ 3 and Ex. A-1.)[2] It was in this timeframe that Green Tree reviewed the records of the prior servicer and found the Property value of $237,603 obtained by the prior servicer in 2010 when Plaintiff applied for his loan modification. (dkt # 23-3, ¶ 7.) The value may have been obtained using an AVM, but there was no documentation in the records to indicate such. (*Id.*) Consequently, Green Tree obtained a new value, of $322,700, using an AVM, in order to complete the documentation that was required for the 2010 HAMP modification and to recalculate Plaintiff's Automatic Termination Date. (*Id.*, ¶¶ 8-9.)

There is nothing improper about relying on an AVM for the valuation. It is specifically allowed by the U.S. Treasury Directive 09-01 that directed HAMP. See U.S. Dep't of the Treasury, Home Affordable Modification Program Supplemental Directive 09-01 (Apr. 6, 2009), pp. 4-5.[3] Moreover, there is no harm to Plaintiff. Using the 2013 value rather than the 2010 value benefits Plaintiff. If the $237,603 value is used, Plaintiff's Automatic Termination Date is much later than February 1, 2020.[4]

---

[2] Plaintiff requested termination of PMI from his prior servicer as well. (dkt # 29, redacted Ex. A to dkt # 25, ¶ 3 and Ex. A-1.)
[3] "To obtain a property valuation input for the NPV calculator, servicers may use either an automated valuation model (AVM), provided that the AVM renders a reliable confidence score, or a broker's price opinion (BPO)." U.S. Dep't of the Treasury Supplemental Directive 09-01, pg. 5.
[4] Plaintiff's hypothetical regarding the increase in Plaintiff's Property value since 2013, based upon the purported increase between 2010 and 2013, has no bearing on the statutory interpretation. (dkt # 26, pg. 17.) If Plaintiff believes his Property has an actual value that exceeds 80% of his principal balance, he can request cancellation of the PMI pursuant to 12 U.S.C.§ 4902(a), using the cancellation date, defined in 12 U.S.C. §4901(2).

  C. *Regardless of whether Section 4901(18)(A) or 4901(18)(B) is used to define Automatic Termination Date, the result is the same: Plaintiff's Automatic Termination Date is February 1, 2020.*

  Plaintiff argues that Green Tree is using the definition of termination date (termed the Automatic Termination Date herein) that is applicable to fixed rate mortgage loans (§ 4901(18)(A)), but instead, should be using the definition applicable to adjustable rate mortgage loans (§ 4901(18)(B)). (dkt # 26, pp. 13-15). Plaintiff's loan modification creates a step rate loan, not an adjustable rate loan. But whether the definition for a fixed rate loan or an adjustable rate loan is used, the difference is of no consequence. Using either definition yields the same result: Plaintiff's Automatic Termination Date is February 1, 2020.

  Section 4901(18)(B) defines the termination date for an adjustable rate mortgage as the date on which the principal balance, "based solely on the amortization schedule then in effect for that mortgage, . . . reach[es] 78 percent of the original value of the property securing the loan." "Amortization schedule then in effect" is also a defined term. It is

> a schedule established at the time at which the residential mortgage transaction is consummated or, if such schedule has been changed or recalculated, is the most recent schedule under the terms of the note or mortgage, …

12 U.S.C. § 4901(6). In other words, per § 4902(d) (applying terms and conditions of the modified loan), it is the amortization schedule created as of the time of the loan modification unless the schedule is changed due to the adjustable rate feature of the loan.

  The amortization schedule used by Green Tree to calculate Plaintiff's Automatic Termination Date after loan modification is attached as Exhibit B-2 to Green Tree's Motion. (dkt # 28-1, the redacted Ex. B-2 to dkt # 23, also attached as dkt # 30-2, the redacted Ex. C to dkt # 22). The schedule begins 9/1/2010, the first payment date under the Loan Modification, uses the modified principal balance of $340,123.01, and adjusts for each interest rate change in

the Loan Modification. (dkt # 28 and dkt # 30.) The schedule starts with an interest rate of 3.0% per annum; changes to 4.0% per annum on 9/1/2015; and changes to 4.375% per annum on 9/1/2016, all in accordance with the terms of the Loan Modification. (*Id*.).

In other words, the "amortization schedule then in effect," created as of the time of loan modification, has not changed. The schedule has not been recalculated because the changes in the interest rate are already reflected in the original schedule. Pursuant to the schedule, Plaintiff's Automatic Termination Date is February 1, 2020.

The 2013 schedule provided to Plaintiff was provided in response to Plaintiff's request. (dkt # 25, pp. 5-6 and dkt # 29.) But it is not the amortization schedule that is to be used to calculate the Automatic Termination Date because it is not a schedule that is created as of the date of the loan modification and it is not the "amortization schedule then in effect" as defined by § 4901(6). (*Id*.) *See also*, Stipulated Facts, ¶ 13 (dkt 24), in which Plaintiff agreed that the amortization schedule to be used for calculating the automatic termination date after loan modification should be the one run from the time of the loan modification.

D.    *Conclusion*

Applying the provisions of the HPA to the uncontroverted facts, Plaintiff's Automatic Termination Date after Loan Modification is February 1, 2020.

For the reasons discussed herein, and in Green Tree's Memorandum in Support of Its Motion for Summary Judgment and Green Tree's Response to Plaintiff's Motion for Summary Judgment, Green Tree respectfully requests this Court to deny Plaintiff's Motion for Summary

Judgment, to grant Green Tree's Motion for Summary Judgment, and to grant such other and further relief as the Court deems appropriate.

>Respectfully submitted,
>
>**GREEN TREE SERVICING, LLC**
>**By: Spilman Thomas and Battle, PLLC**
>
>_s/ *Debra Lee Hovatter*_____
>Debra Lee Hovatter (WVSB # 9838)
>Spilman Thomas & Battle, PLLC
>48 Donley Street, Suite 800
>Morgantown, WV 26507-0615
>304.291.7951 / 304.291.7979 (*facsimile*)
>dhovatter@spilmanlaw.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CURT RICE,

      **Plaintiff,**

v.                                  CIVIL ACTION NO. 3:14-CV-93 (Groh)

GREEN TREE SERVICING, LLC,

      **Defendant.**

## CERTIFICATE OF SERVICE

I, Debra Lee Hovatter, counsel for defendant Green Tree Servicing LLC, do hereby certify that on June 4, 2015, I electronically filed the above **Green Tree Servicing, LLC's Reply in Support of Its Motion for Summary Judgment**, and that the same has been served upon counsel of record via electronic notification through the Court's CM/ECF system, as follows:

    Andrew C. Skinner, Esq.
    Skinner Law Firm
    P.O. Box 487
    Charles Town, WV 25414
    AndrewSkinner@Skinnerfirm.com
    **Counsel for Plaintiff**

                                               /s/ *Debra Lee Hovatter*
                                               Debra Lee Hovatter (WV Bar No. 9838)